**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

KENNY TRAVIS, JR.,               )
ADC # 119406                     )
    Plaintiff,               )    **Case No. 5:11-CV-00119 JTK**
                             )
v.                               )
                             )
RAY HOBBS, Director, Arkansas    )
Department of Correction         )
    Defendant.               )

## MEMORANDUM AND ORDER

BEFORE THE COURT is Petitioner Kenny Travis, Jr.'s Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, filed on May 13, 2011. Doc. No. 2. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). Doc. No. 27. After reviewing all of the relevant materials, the Court finds that that the petition should be DENIED.

### Background

On June 24, 2005, Petitioner, Kevin Ransom, and Acquilla Ramsey went to J.W. Hall's auto dealership under the pretense that they were going to sell Hall a videotape of his mistress having sex with another man. When they arrived, Petitioner and Ransom entered Hall's office and demanded money. Petitioner then shot Hall in the leg and asked him where the safe was. Some form of altercation ensued, and Hall was shot in the upper body and head. Hall subsequently died from his injuries. Petitioner later confessed his crime during a car ride to Memphis with Andre Love, and Love recorded the confession on his cell phone.

1

Petitioner was convicted of capital murder and aggravated robbery by a jury in the Mississippi County (Arkansas) Circuit Court on August 11, 2006.  He was sentenced to life imprisonment without the possibility of parole and ten years' imprisonment, respectively. Petitioner subsequently appealed his conviction to the Arkansas Supreme Court, arguing that the trial court erred by 1) denying his motion for a continuance or for a mistrial based on Ransom's testimony that there was a different copy of Love's voice recording, 2) denying his *Batson* challenge to the State's exclusion of jurors, 3) refusing to allow admission of several phone conversations, 4) refusing to allow him to perform a voice recording demonstration on Love's cell phone in order refute that the recording was made on his phone, and 5) denying his motion in limine concerning introduction and reference to Love's cell phone and voice recording.  His conviction was affirmed on December 6, 2007. *Travis v. State*, 371 Ark. 621, 269 S.W.3d 341 (2007).

On January 18, 2008, Petitioner sought postconviction relief pursuant to Ark. R. Crim. P. 37.1, arguing that 1) his trial counsel was ineffective, 2) the prosecutor withheld the coroner's report, 3) the jury convicted him of a murder and robbery that took place on the day after the information indicated the crimes occurred, 4) he was subjected to double jeopardy because the two offenses overlapped, and 5) the prosecutor used coerced and perjured testimony.  That petition was denied on February 20, 2008.  Petitioner appealed the decision to the Arkansas Supreme Court,[1] arguing that 1) the lower court erred by denying his Rule 37 petition without an evidentiary hearing and 2) the court's order did not contain findings of fact as required by

---

[1]  Petitioner was allowed to file a belated appeal by the Arkansas Supreme Court because he demonstrated that he had never received notice of the February 2008 decision. *Travis v. State*, 375 Ark. 244, 289 S.W.3d 474 (2008) (per curiam).

Arkansas Rule of Criminal Procedure 37.3.  The court held that the lower court's failures were excusable because the petition was meritless, and Petitioner's appeal was denied on September 23, 2010. *Travis v. State*, 2010 Ark. 341, 2010 WL 3719967 (per curiam).  Respondent admits that Petitioner is in his custody and that there are no unexhausted, non-futile state remedies available.

## Discussion

Petitioner argues that he is entitled to relief because 1) the trial court erred by failing to grant a continuance or mistrial, 2) the trial court erred by denying his *Batson* challenges, 3) the trial court erred by excluding the taped conversations between Ramsey and Travis, 4) the trial court erred by refusing to allow him to demonstrate a voice recording with Love's cell phone, 5) the trial court erred by denying his motion in limine, 6) his trial counsel was ineffective, and 7) the State committed prosecutorial misconduct.   For the reasons discussed below, these claims are either procedurally barred, meritless, or both.

### I.  Procedural and Jurisdictional Bars to Petitioner's Claims

Respondent contends that Petitioner's first, third, fourth, and fifth claims are not cognizable because he has failed to raise any issues of federal law. Federal courts may only entertain applications for habeas corpus from persons in state custody based on grounds that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).

Petitioner's first ground is primarily based on perceived violations of the Arkansas Rules of Criminal Procedure, and there does not appear to be any jurisdictional basis for entertaining such an argument.[2] The third claim refers to the "Rules of Evidence," and the Court will assume for the sake of argument that he is referring to the Federal Rules of Evidence.  The fourth and fifth grounds are based entirely on state law; thus, the Court cannot review them.

Requests for federal habeas relief must be based on arguments of federal law, but petitioners must also present those federal arguments to the state courts.  "[W]e traditionally demand that a habeas petitioner have presented 'the same legal theories and factual bases to the state courts.'" *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995) (quoting *Pollard v. Armontrout*, 16 F.3d 295, 297 (8th Cir. 1994)).  "At minimum, though, the petitioner during direct appeal must have explicitly referred the state courts to the United States Constitution or federal case law." *Id.* (citing *Luton v. Grandison*, 44 F.3d 626, 628 (8th Cir. 1994)); *see also Carney v. Fabian*, 487 F.3d 1094, 1096-97 (8th Cir. 2007) (holding that prisoner did not satisfy presentment requirement because he "did not specifically assert a due process violation, refer to the United States Constitution, or cite a relevant federal constitutional case"); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam) (holding that state courts "must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution"); *McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir. 1991) ("Explicit citation to the Constitution or to a federal case is necessary for fair presentation of a constitutional claim in state court.").

The third ground for Petitioner's direct appeal was based on the trial court's perceived violation of Arkansas Rules of Evidence 607 and 613 when it refused to allow several taped

---

[2] Petitioner does provide two citations to federal decisions in his argument, so their potential merit will be addressed in a subsequent section.

conversations to be played for the jury.  It does not appear that Petitioner put the state courts on notice that he was making any federal arguments, so this claim is procedurally defaulted. Further, Petitioner's argument is barred by the "independent and adequate state ground doctrine." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

The three conversations at issue took place between Ramsey, Petitioner's girlfriend and co-defendant, and Ann Travis, Petitioner's aunt.  In these conversations, Ramsey apparently told Travis that she had lied or misrepresented the truth because she had been threatened by Betty Thompson, an officer with the Osceola Police Department.  Petitioner attempted to introduce tapes of the conversations, but the court refused to allow their admission.  The court's reasons for that ruling are unknown because the in-chambers conference where the ruling was made is not contained within the record.  Petitioner alleges that the court's ruling was based on the fact that Ramsey had already impeached herself when she admitted to making these statements during her testimony.  However, Petitioner argues that Ramsey's admission was insufficient impeachment because she qualified her admission by saying that the statements were made in response to Travis's coercive threats to withhold Ramsey's children.  Thus, Petitioner contends that the tapes should have been played because they would have provided more effective impeachment by demonstrating Thompson's coercion and the lack of coercion from Travis.

Petitioner's argument was rejected by the Arkansas Supreme Court because the lack of any record meant that there was no way to determine the rationale behind the ruling, whether there was any objection to the ruling, or whether arguments concerning Rules 607 or 613 were ever raised before the trial court.  The court held that the lack of any proof in the record meant that the argument was precluded because it was being raised for the first time on appeal.

"Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Coleman*, 501 U.S. at 729.

Petitioner failed to obtain rulings for his fourth and fifth grounds for relief, and the Arkansas Supreme Court ruled that he failed to properly preserve these issues for appeal. Thus, these arguments are barred from federal review by an independent and adequate state ground.

The seventh ground for relief, which contends that the State committed prosecutorial misconduct by failing to provide the coroner's report, is also barred because it was not properly presented to the Arkansas courts. This argument was only presented in Petitioner's Rule 37 petition, and the Arkansas Supreme Court rejected it because such a claim is not cognizable in a Rule 37 proceeding. "[W]e ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). To meet the fair presentation requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. Accordingly, this claim is barred from federal review.

The abovementioned procedural defects bar federal consideration of Petitioner's claims unless he can 1) show cause for the defaults and actual prejudice as a result of the alleged constitutional violations or 2) demonstrate that failure to consider these claims will result in a fundamental miscarriage of justice. *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011).

Although it is unclear, Petitioner appears to contend that his procedural defaults are excused by his counsel's ineffective assistance. Any such argument fails for several reasons.

6

First, this is an argument of cause and prejudice, which cannot cure Petitioner's failure to raise a federal issue in his first, fourth, and fifth claims.  Second, Petitioner did not raise any ineffective assistance claims at the state level based on counsel's failure to raise the third and seventh arguments, and he has not demonstrated cause and prejudice for such ineffective assistance of counsel claims. *Edwards v. Carpenter*, 529 U.S. 446, 452-54 (2000) (holding that a procedurally defaulted ineffective assistance of counsel claim may serve as cause for another defaulted claim, but the prisoner must first establish cause and prejudice for the defaulted ineffective assistance claim).  Even if it is assumed that the exception recently carved out in *Martinez v. Ryan* applies, Petitioner has failed to demonstrate that he received ineffective assistance or that sufficient prejudice resulted from the ineffective assistance. *Martinez*, 132 S. Ct. 1309 (2012) (holding that inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial).  Finally, Petitioner has also failed to demonstrate the requisite prejudice from the default of his third and seventh arguments.  Given the amount of evidence that was presented at trial, it is unlikely that Petitioner could have satisfied his burden regarding prejudice even if he had attempted to do so. *See U. S. v. Frady*, 456 U.S. 152, 172 (1982) (finding the overwhelming amount of evidence against the petitioner prevented a successful assertion of prejudice).

Petitioner also argues that his procedural defaults should be excused because he is actually innocent.  To fall within the fundamental-miscarriage-of-justice exception, 'a habeas petitioner [must] present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted.'" *Murphy*, 652 F.3d at 850 (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

Petitioner contends that his counsel failed to investigate and develop evidence that would have proven his innocence.   However, this is merely speculation about the existence of new evidence, and it appears that Petitioner has conflated ineffective assistance of counsel with actual innocence.   Lastly, he has failed to meet his burden regarding the fundamental miscarriage of justice exception because he never even identifies what the potentially exculpatory evidence was.[3]

Petitioner also seems to argue that he is innocent of the crime for which he was convicted because the criminal information indicated that the crime took place on the day prior to the date listed on the coroner's report.   He was convicted of capital murder, a violation of Ark. Code Ann. § 5–10–101 (Supp. 2003), and aggravated robbery, a violation of Ark. Code Ann. § 5–12–103 (Repl. 1997).   The clerical error contained in the criminal information does not appear to have any legal significance because neither of these statutes includes the date of the occurrence as an element. *See United States v. Turner*, 975 F.2d 490, 494 (8th Cir. 1992) (recognizing that a variance between indictment and proof is not fatal as long as the date is not a material element to the crime); *United States v. Agard*, 531 F. Supp. 2d 1072, 1074 (D.N.D. 2008).

Finally, Petitioner maintains that his claims are not procedurally defaulted because he complied with the pleading requirements of Rule 37.1.   However, Rule 37 is only relevant to

---

[3]  Petitioner vaguely mentions "exculpatory evidence" repeatedly throughout his lengthy reply, but it is extremely unclear what he is referring to.  At some points it seems that he means new evidence demonstrating his innocence, but at other points it appears to refer to the time of death contained in the coroner's report, speculation about cell phone tampering, or evidence that could have been used to impeach witnesses.

Petitioner's prosecutorial misconduct argument, and that argument was dismissed because it was not cognizable under Rule 37. Thus, the factual specificity of his Rule 37 pleadings is irrelevant.

## II.   Petitioner's Motion for Mistrial

As noted above, Petitioner's first ground for relief is primarily based on perceived violations of the Arkansas Rules of Criminal Procedure when the trial court failed to grant a continuance or mistrial. However, Petitioner does cite two federal cases in this argument, so the Court will analyze those holdings in the context of the trial court's denial of his motion.

The motion at issue was initially made after Ransom testified that Officer Mike Grimes played a microcassette copy of Love's phone recording of Petitioner's confession during a police interview on August 4, 2005. However, Petitioner was only given a CD version of the confession on the night before the August 2006 trial began, and the defense was never made aware of any cassette version. Resp. Ex. G, at 289-93, 392, 565-70; Pet. at 6-7. Ransom testified that he heard Petitioner say on the tape that he was going to kill Ransom because Petitioner was afraid that Ransom would talk to the police. *Id.* Yet no such threats were made during the version that was given to Petitioner or the version that was played in court from the phone.

The motion was raised a second time after Officer Grimes testified that he had made a tape of the confession by playing the recording on the phone's speaker and recording it with his digital recorder. His digital recorder then enabled him to transfer the confession to his laptop and make a CD. After explaining how the three different forms of copies (cell phone, cassette, and digital) were made, he attested that all three versions were identical. Defense counsel objected that he had been affirmatively misled by the State because it had been telling him for over a year that the voice record could not be downloaded from the phone due to the necessary

9

tape equipment being unavailable.  Thus, Petitioner argued he was denied sufficient preparation regarding the contents of the confession and also the ability to have any tests performed, such as tests for voice analysis or tampering.  Petitioner was particularly concerned with tampering because Love had been allowed to continue using the phone prior to trial and because Ransom testified that there was a threat on the taped recording that was not contained in the other versions. *Id.* at 289-93.

It is unclear what the trial court's reasons for denying the first two instances of the motion were, but an explanation was given for the third denial.[4]  The court found that there had been no discovery violations because Ransom could have been mistaken about whether the recording he heard was played on a cassette. *Id.* at 570.  Further, the court did not believe there was any prejudice, particularly in light of the amount of evidence against Petitioner.  The Arkansas Supreme Court ultimately rejected Petitioner's arguments because it found that Officer Grimes's testimony clearly demonstrated that there were no differences between the different formats.  Further, it held that Petitioner was not prejudiced by any failure to disclose because he declined the digital copy.[5]

Federal courts may only overturn a state adjudication through habeas if it resulted in a decision that was 1) "contrary to, or involved an unreasonable application of, clearly established

---

[4]  This is because the record concerning the bench conference where Petitioner's motion was first addressed is largely nonexistent due to equipment failure.  The court did not provide any reasons for its second denial.

[5]  Officer Grimes's testimony indicates that Petitioner's counsel was offered a digital copy of the recording at an earlier date, and that counsel replied he didn't care what version of the copy he received, as long as he received one. *Id.* at 409.  Officer Grimes indicated that he preferred to give counsel an enhanced version after the crime lab could work on it, but this enhancement ultimately proved unsuccessful, and counsel received the original copy made by Officer Grimes at a later date.

Federal law, as determined by the Supreme Court of the United States," or 2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court decision is 'contrary to' clearly established federal law if it reaches a conclusion opposite that of the Supreme Court on a question of law, or reaches a decision contrary to the Supreme Court on materially indistinguishable facts." *Arnold v. Dormire*, 675 F.3d 1082, 1085 (8th Cir. 2012) (citing *Williams v. Taylor,* 529 U.S. 362, 405 (2000)). "A state court decision involves an 'unreasonable application' when it identifies the correct legal rule, but unreasonably applies it to the facts. 'A state court's application of clearly established federal law must be objectively *unreasonable*, not merely incorrect, to warrant the granting of a writ of habeas corpus.'" *Id.* (citing *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011)).

Under federal law, the denial of a motion for mistrial is reviewed for abuse of discretion, and "[t]he prejudicial effect of any improper testimony [or evidence] is determined by examining the context of the error and the strength of the evidence of the defendant's guilt." *United States v. Dale*, 614 F.3d 942, 960 (8th Cir. 2010) (second alteration in original) (quoting *United States v. Smith*, 487 F.3d 618, 622 (8th Cir. 2007)). Although the Arkansas Supreme Court and trial courts applied Arkansas law, they both correctly based their decisions on whether Petitioner suffered prejudice. Therefore, those decisions must have involved an unreasonable application of the law. *Arnold*, 675 F.3d at 1085.

Petitioner's first argument is that the trial judge improperly determined Ransom was mistaken about whether there was a cassette version of the confession. He contends that this was a question concerning Ransom's credibility and the existence of a tape of Petitioner threatening

Ransom's life.  Thus, he believes that the judge violated his "right to have the jury decide all relevant issues of fact." *United States v. Dakota Cheese, Inc.*, 906 F.2d 335, 338 (8th Cir. 1990).

With respect to Ransom's credibility, there is little merit to Petitioner's argument because there was nothing to prevent him from attacking Ransom's credibility by pointing out that there were no threats contained in the recordings that had been played in court.  The Court also declines to adopt Petitioner's view that the court decided an issue of fact for the jury.  Given Officer Grimes's testimony, the Court sees little basis for the trial court's speculation that Ransom could have been mistaken as to whether there was a cassette.  However, the judge's statement does not indicate any errors of constitutional significance.  It was not the existence of a cassette that was at issue; it was whether the version that was played for Ransom was different from what was submitted to the defense and the court.  The only basis for believing that Officer Grimes was lying about this issue was Ransom's testimony that he heard Petitioner threaten him during the "ten seconds" of the recording that was played for him a year before the trial.  Resp. Ex. G, at 289.   Given that Petitioner apparently remarked that he considered killing Ransom at the scene of the crime, it is not unreasonable to believe that this was the "threat" Ransom remembered hearing.[6]  *Id.* at 107.  Further, the jury heard Officer Grimes's testimony about the creation of the different versions of the recorded statement and Ransom's testimony about what

---

[6] The record does not contain what was said in the recordings that were played during court, and there does not appear to have been any transcription or copy of the confession included in the record. Thus, the Court cannot definitively state whether any such threats were contained therein. However, immediately prior to the first playing of the recordings, Love testified that the second of the two recordings contained statements by Petitioner to the effect that he considered killing Ransom at the scene of the crime because Ransom froze up when Petitioner shot the victim. Petitioner apparently said he did not kill Ransom because he lived with Ransom and Ransom's death would raise suspicions. *Id.* at 107. Petitioner's counsel made no objections and posed no questions that indicated this was an inaccurate depiction of what was said in the recordings.

he remembered hearing on the cassette version.  There is nothing to indicate that the judge ever

instructed the jury to accept Officer Grimes's testimony as true.  Thus, to the extent that the

jury's involvement was required, there was no undue judicial interference.

Even if Petitioner's speculation about an extended version turned out to be correct, it is

unclear how he suffered any prejudice.  Petitioner assumes that the extended version of his taped

confession to murder also includes him threatening to kill an accomplice to avoid apprehension.

Given that there were additional incriminating statements contained on the purported extended

version, it is unlikely that such a version would have helped him.  Further, the amount of

evidence was substantial even without the recording,[7] and it can hardly be said that the outcome

of his trial was sufficiently undermined to justify federal habeas relief.  Thus, the Arkansas

courts reasonably applied the law when they found that Petitioner did not suffer sufficient

prejudice.

Petitioner's second argument is that his motion should have been granted because the

prosecution committed a prejudicial *Brady* violation by failing to disclose favorable evidence.

*Brady v. Maryland*, 373 U.S. 83 (1963).  As discussed above, there is little to indicate that any

extended version of Petitioner's confession ever existed, that it would have been favorable to

Petitioner, or that it was "material either to guilt or to punishment." *Id.* at 87.  To the extent that

Petitioner protests receiving a copy of the recording at the eleventh hour, the Arkansas Supreme

---

[7]  Although this list is far from exhaustive, the following pieces of evidence sufficiently demonstrate
the strength of the State's case against Petitioner: 1) Ramsey and Ransom both testified that they
were present when Petitioner murdered Hall and that Petitioner subsequently spent large amounts
of money, *Id.* at 250, 466; 2) Petitioner independently confessed to Love, *Id.* at 56, 793-94; and 3)
Pearlie Mae, Petitioner's friend, testified that Petitioner borrowed her gun, which was not returned,
and her car, which was seen at the crime scene, on the day of the murder. Resp. Ex. H, at 319-23,
Doc. No. 57.

13

Court correctly ruled that this argument was waived when his counsel declined Officer Grimes's previous offer of the digital copy.   Accordingly, Petitioner has failed to demonstrate sufficient prejudice or that the state courts' rulings on these matters involved unreasonable applications of the law.

### III.   Petitioner's *Batson* Challenges

Petitioner contends that his rights under the Equal Protection Clause were violated because the prosecution improperly used peremptory challenges to exclude five of the six potential black jurors due to race.   However, Petitioner only challenges the trial court's rulings with respect to four of those jurors.[8]

Courts review such arguments under the three-step inquiry mandated by *Batson v. Kentucky*, 476 U.S. 79 (1986).   The first step requires determining "whether the defendant has made a prima facie showing that a prosecutor's peremptory strike was based on race." *Smulls v. Roper*, 535 F.3d 853, 859 (8th Cir. 2008) (citing *Rice v. Collins*, 546 U.S. 333, 338 (2006)).   If the answer is yes, "the burden then shifts to the prosecutor to present a race-neutral explanation for striking the juror." *Id.*   As long as the stated reason is not inherently discriminatory, it does not need to be persuasive or even plausible. *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam).   "The burden then shifts back to the defendant at the third step to shoulder his ultimate burden of establishing purposeful discrimination." *Smulls*, 535 F.3d at 859.   "This final step involves evaluating 'the persuasiveness of the justification' proffered by the prosecutor, but 'the

---

[8] Petitioner has not made any arguments that refer to the Arkansas Supreme Court's *Batson* review, but the Court would note that he has failed to rebut the presumption of correctness of that decision. *Weaver v. Bowersox*, 241 F.3d 1024, 1031 (8th Cir. 2001) ("Findings of fact made by state appellate courts have the same presumptive correctness as findings of fact made by state trial courts."); *Cole v. Roper*, 623 F.3d 1183, 1188 (8th Cir. 2010).

14

ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.' *Rice*, 546 U.S. at 338 (quoting *Purkett*, 514 U.S. at 768).

The Eighth Circuit has "held that each of the three steps of the *Batson* inquiry involves a determination of fact." *Weaver*, 241 F.3d at 1030. Therefore, Petitioner "must establish that the state court rulings were 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Williams v. Norris*, 576 F.3d 850, 863 (8th Cir. 2009) (quoting 28 U.S.C. § 2254(d)(2)). Such determinations "shall be presumed to be correct" and petitioners bear "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(d)(2) & (e)(1); *see also Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). The statute "makes no distinction between the factual determinations of a state trial court and those of a state appellate court." *Sumner v. Mata*, 449 U.S. 539, 546 (1981). The standard statutory deference for habeas review is "doubly great" when reviewing *Batson* challenges because of the trial judge's "unique awareness of the totality of the circumstances surrounding voir dire." *Weaver*, 241 F.3d at 1030; *United States v. Moore*, 895 F.2d 484, 486 (8th Cir. 1990).

Petitioner's first challenge involves the striking of prospective juror Helen Langel. After a list of the defense witnesses was read to the jury, Langel indicated that she knew Rev. Moses Black because he had a church in Osceola. Resp. Ex. H, at 180, Doc. No. 57. During the subsequent questioning, Langel indicated that she knew Rev. Black very well because he was her elderly mother's pastor; he occasionally came to her home to visit her mother; and she sometimes worshipped at his church. *Id.* at 189. However, she also responded that his church was not her primary church; she did not believe their relationship would affect her ability to be a

juror; and that she would not assume that everything Rev. Black said was true. *Id.* at 188-89. Counsel objected to her exclusion because he felt that her answers indicated that there would not be any problems.   Counsel also argued that the prosecution's exclusion of five of the six potential black jurors amounted to a systematic and intentional process to prejudice Petitioner. The prosecution responded that her relationship with an important defense witness was the basis for the strike, and the court denied Petitioner's *Batson* challenge based on that relationship.

Petitioner's argument is entirely based on Langel's statements that her familiarity with Rev. Black would not be a problem and the judge's statement that Langel's "responses were not such that I would have excused her for cause based on her answers." *Id.* at 215.   The judge's remark does not mean that the prosecution could not strike Ms. Langel based on her responses, and Petitioner has failed to present any clear and convincing evidence to rebut the presumption that the judge's determination was correct.   Given the dual layers of deference that restrict the Court's review, there is no basis for disturbing the trial judge's decision.

Petitioner's second argument challenges the striking of prospective juror Erma Williams. Williams indicated that her son had recently been wrongfully convicted in a criminal jury trial and that the memories would probably cause her to do more crying than anything else if she was selected. *Id.* at 19-20.   She did state that she believed she could perform her duties, but this was qualified with statements that she thought the prosecution would have a higher burden with her than with another juror. *Id.* at 21-23.   The prosecution requested that Williams be struck for cause, but the court denied the motion and a peremptory strike was used instead.

Petitioner argues that this was part of a systematic removal of black jurors, and he questions whether Williams's statements were a sufficient basis for being struck.   However,

16

Petitioner's extremely brief attempt to minimize the legitimacy of any potential concerns regarding Williams is plainly insufficient to meet his heavy burdens under federal habeas review. *See, e.g.*, *McDonald v. Bowersox*, 101 F.3d 588, 596 n.7 (8th Cir. 1996) ("On their face, [petitioner's] bare assertions have failed to state a cognizable . . . claim entitling him to habeas relief."). Further, Ms. Williams's statements that she would be extremely emotional and that she would likely need more to be convinced than other jurors provide a reasonable basis for the trial judge's decision.

The third challenge involves the striking of Ms. Gillespie. Gillespie told the Court that she was the hairdresser for one of Petitioner's daughters as well as her mother and that the daughter had talked about what was happening with her father during their last appointment. *Id.* at 5. Gillespie also indicated that she thought this relationship could affect her ability to be a juror because Gillespie had a daughter and she knew what kind of impact it would have on Petitioner's daughter if he was found guilty. *Id.* at 5, 7, 12. Finally, she was also worried about the financial consequences of serving on the jury. Again, Petitioner merely concludes that these grounds were insufficient to withstand his *Batson* challenge, but this is insufficient to meet his burdens. Although it is certainly troubling that the prosecution would strike all but one of the potential black jurors, the trial court's findings were not unreasonable. Further, Petitioner has failed to offer any evidence that clearly rebuts the presumption of correctness.

Lastly, Petitioner challenges the striking of Mary Hopkins. She indicated that she knew Rev. Black because she was a member of his church, but she also thought that this would not prevent her from serving as a fair and impartial juror. *Id.* 53. Hopkins went on to state that she did not believe in judging other people and that being on the jury would make her extremely

uncomfortable. *Id.* at 54.  Although she said that she could probably serve if she was required to, she also said that she would leave it up to the other jurors and just say whatever they wanted to say. *Id.* at 55.  In defending its strike, the prosecution mentioned that it planned on vigorously cross-examining Rev. Black and that it was worried how a member of his congregation would react.  Given her answers regarding what she would do if she was selected as a juror and her relationship to an important defense witness, there does not appear to be any basis for finding the judge's decision was unreasonable.  As with his previous claims, Petitioner's argument cannot succeed because he has failed to meet his burdens.

## IV.   Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was ineffective for failing to 1) take steps necessary to ascertain the time of death, 2) use the coroner's report to impeach witnesses regarding the time of death, 3) obtain a ruling as to the admissibility of the cell phone recording, and 4) obtain a ruling regarding the trial court's denial of his request to introduce taped conversations between Travis and Ramsey.  The fourth argument will not be reached because it was not presented to the state courts.[9] *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) ("A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims.") (citing *O'Sullivan*, 526 U.S. at 848).

---

[9] It does not appear that any of the first three arguments were actually presented to the Arkansas Supreme Court either. *O'Sullivan*, 526 U.S. at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). The only two arguments Petitioner presented during his Rule 37 appeal were that the trial court erred by denying his petition without conducting an evidentiary hearing and that the trial court's order failed to contain the factual findings required by statute. Pet'r's Appeal Br., Resp. Ex. E, at 1-8.  However, the Arkansas Supreme Court addressed the merits of Petitioner's first three ineffective assistance claims, so the Court will do likewise. To the extent that the default of Petitioner's fourth claim is excused under *Martinez*, 132 S. Ct. 1309 (2012), he has failed to demonstrate sufficient prejudice.

In order to succeed, Petitioner must show both that his counsel provided deficient assistance and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish deficient performance, he must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  Courts must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689.  Petitioner bears the burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. With respect to prejudice, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

The Arkansas Supreme Court correctly identified *Strickland* as the appropriate rule for reviewing Petitioner's ineffective assistance claims, so Petitioner must demonstrate that the court's application of *Strickland* was objectively unreasonable. *Norris*, 651 F.3d at 925. However, Petitioner has failed to meet the burdens placed on him under *Strickland* and 28 U.S.C. § 2254(d).

Although they are presented as distinct, Petitioner's first two ineffectiveness arguments are essentially identical and can be addressed simultaneously.  The felony information that was used at trial apparently alleged that Petitioner committed the crimes on June 24, 2005, but the

coroner's report indicated that the crimes and Hall's death occurred on June 25, 2005.  The first argument contends that Petitioner's counsel was ineffective because he failed to subpoena the coroner or present a defense based on Petitioner's alibi for June 25, 2005.  The second argument contends that counsel was ineffective because he failed to use the coroner's report to impeach the prosecution's witnesses and that this failure prejudiced his ability to present his strong alibi. Petitioner's arguments are speculative and conclusory, and he has failed to demonstrate the required prejudice.  There is no indication that the date of the murder was of any particular importance or that there was ever any genuine confusion about when the crime actually occurred.  Further, Petitioner testified that he was in Memphis, Tennessee at the time of the shooting in Osceola, Arkansas, so it is unclear how counsel's failure to address a clerical error in the information prejudiced his ability to present his alibi in any way. Pet'r's Traverse Ex. 1, at 20-36, Doc. No. 22; *see also supra* 8 (noting that the date of the crime was not an element of either offense).

Petitioner's third and final argument is that his counsel was ineffective because he failed to obtain a ruling regarding a chain of custody objection based on Love's possession of the cell phone during the time leading up to trial.  The Arkansas Supreme Court correctly noted that Love testified about Petitioner's statements and that the defense cross-examined Love about the time he had the phone and the potential this created for tampering.  Even if it is assumed that an error was made and that a favorable ruling would have been obtained, Petitioner has failed to meet his "burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696. As previously noted, the case against Petitioner was very strong, and there was a substantial amount of evidence presented.  This

means that Petitioner's burden for demonstrating prejudice is particularly heavy, but he has failed to offer anything more than conclusory allegations.

IT IS THEREFORE ORDERED that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 2) be, and it is hereby, dismissed, with prejudice.  The relief prayed for is DENIED.

The Court will not issue a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2).

SO ORDERED this 9th day of July, 2012.

_____
United States Magistrate Judge